# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE LIGONS, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 25-4617-TJS |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS**

## I.  INTRODUCTION

Defendants' Supplemental Memorandum asks this Court to adopt the reasoning of Ra'Sheen Brown v. City of Philadelphia, No. 24-1019-MMB (E.D. Pa. May 20, 2026), and hold that Plaintiff Antoine Ligons' §1983 claims are barred in their entirety by Heck v. Humphrey, 512 U.S. 477 (1994).  That argument fails for

three independently sufficient reasons.  First, <u>Brown</u> was decided on the minority view of <u>Heck</u>'s application in two-conviction cases, a view that conflicts with the overwhelming majority of decisions in this District and the persuasive authority of the Second and Ninth Circuits.  Second, <u>Brown</u> is factually distinguishable from this case in ways that are decisive: unlike in <u>Brown</u>, where no genuine <u>Brady</u> violation was ever established, the <u>Brady</u> violation here was adjudicated by a federal court, and the conviction was vacated by federal court order — not as a matter of prosecutorial policy, but as a matter of constitutional law.  Third, the record of Mr. Ligons' 2024 guilty plea confirms rather than defeats this distinction.  The Commonwealth crafted a factual basis that conspicuously omitted any mention of Sonya Johnson's eyewitness identification and any mention of Mr. Ligons' confession, the precise evidence the suppressed photo arrays and evidence of physical coercion would have undermined, because the <u>Brady</u> violation had already rendered the Commonwealth's case unable to be retried.  Mr. Ligons accepted that plea to come home, not to concede the fairness of a prosecution built on suppressed evidence and fabricated testimony.  It is Defendants, not Mr. Ligons, who seek to have it both ways: the DAO conceded the <u>Brady</u> violation and structured a plea to avoid the tainted evidence, while the City's lawyers now claim that same evidence was immaterial.  A verdict for Mr. Ligons on his §1983 claims would bear only on

his vacated 1999 conviction and would not imply the invalidity of a 2024 plea deliberately constructed to stand apart from the evidence he challenges.

## II.  BROWN IS NOT BINDING AND REPRESENTS THE MINORITY VIEW IN THIS DISTRICT

As a threshold matter, Brown is not binding authority.  It is a single district court opinion that expressly acknowledged it was departing from the predominant approach of courts in this District and adopting instead the dissenting views from Poventud v. City of New York, 750 F.3d 121 (2d Cir. 2014) (en banc).  Brown, No. 24-1019-MMB, at 20-21 & n.8 ("In the absence of any controlling precedent by the Supreme Court or the Third Circuit, I am adopting the analysis of Judge Jacobs and Judge Livingston.").  The Third Circuit has not resolved the issue, and this Court is therefore free to apply the majority rule.

The majority rule in this District, applied uniformly across numerous recent decisions, is that Brady, fabrication, and deliberate deception claims arising from a vacated first conviction are not Heck-barred when the second conviction is a "clean conviction entirely insulated" from the challenged constitutional violations.  Carson v. City of Philadelphia, No. CV 23-2661, 2024 WL 3792223, at *4-5 (E.D. Pa. Aug. 13, 2024) (Sánchez, J.); White v. City of Philadelphia, No. CV 23-4538, 2025 WL 3706949, at *3 (E.D. Pa. Dec. 22, 2025) (Bartle, J.); Natividad v. Raley, No. CV 22-5061, 2025 WL 1550740, at *4-5 (E.D. Pa. May 30, 2025) (Pappert, J.); Gladden v.

City of Philadelphia, No. CV 21-4986, 2022 WL 605445, at *4-7 (E.D. Pa. Feb. 28, 2022) (Kearney, J.); Maldonado v. City of Philadelphia, No. CV 22-3474, 2023 WL 4685967, at *4-7 (E.D. Pa. July 21, 2023) (Murphy, J.).  This majority approach also reflects the en banc holding of the Second Circuit in Poventud and the Ninth Circuit decision in Jackson v. Barnes, 749 F.3d 755, 760-61 (9th Cir. 2014).  The Court should apply this substantial and well-reasoned body of authority rather than the single outlier opinion in Brown.

## III.  BROWN IS FACTUALLY DISTINGUISHABLE FROM THIS CASE IN WAYS THAT ARE DECISIVE TO THE HECK ANALYSIS

Even accepting Brown's analytical framework arguendo, the factual record here requires a different result.  The Heck analysis turns on whether success on the §1983 claims would "necessarily imply the invalidity" of the outstanding conviction. Heck, 512 U.S. at 487.  Examining that question requires careful attention to the specific record of both the original constitutional violations and the subsequent plea. That examination reveals two critical distinctions that the Brown court did not confront.

### A.  Unlike in Brown, the Brady Violation Here Was Adjudicated by a Federal Court — Not Conceded as a Matter of Prosecutorial Policy

The Brown court's entire Heck analysis rested on a foundation that does not exist in this case.  In Brown, the court expressly found that "Plaintiff has not shown that there was a Brady violation at his trial" and that the suppressed records were

"collateral to Plaintiff's prosecution." Brown, No. 24-1019-MMB, at 31-32. The DAO's concession of materiality was characterized by the court as "likely based on policy considerations and Detective Pitts' conduct in other cases." Id. In other words, Brown is a case where no genuine constitutional violation was ever established making Heck's "favorable termination" requirement the natural vehicle for dismissal.

Here, the constitutional violation was not conceded as a policy matter, it was adjudicated. The Honorable Jeffrey L. Schmehl, found that the Commonwealth violated Brady v. Maryland, 373 U.S. 83 (1963); that the photo arrays were favorable to Mr. Ligons; and that the suppression was material in that it "both raises a reasonable probability of a different result and undermines confidence in the outcome of the trial." Ligons v. Beard, No. 09-05095-JLS, ECF No. 128 (E.D. Pa. Sept. 21, 2023). The Commonwealth itself conceded that relief was warranted. That federal court adjudication is a binding judicial determination, not a policy judgment and it cannot be nullified by a subsequent guilty plea entered in entirely different circumstances.

The significance of this distinction cannot be overstated. Heck was designed to prevent prisoners from using §1983 as a substitute for habeas corpus to attack otherwise-valid convictions. 512 U.S. at 484. Where a conviction has already been vacated by a federal court on constitutional grounds, the concern animating Heck —

protecting the finality of valid convictions — simply does not apply with the same force. To apply <u>Heck</u> to bar claims arising from a judicially-established constitutional violation would turn the doctrine on its head.

## B. The Factual Basis of the Guilty Plea Was Deliberately Constructed to Exclude the Constitutionally Tainted Evidence

Defendants rely heavily on the guilty plea transcript as Exhibit A to their Supplemental Memorandum, but a careful reading of that transcript undermines rather than supports their argument. The plea colloquy reveals two independent grounds on which the plea is insulated from the constitutional violations alleged in this action.

First, and most fundamentally, the factual basis recited by the Commonwealth at the plea hearing was deliberately and conspicuously stripped of the very evidence that gave rise to the <u>Brady</u> violation. ADA Silverstein's proffer described only the bare mechanics of the robbery and shooting: that a person in a black ski mask approached Clarence Johnson, demanded money, and shot him after Sonya Johnson stated she had no money. ECF No. 32-1 at pp. 10–11. The proffer made no mention of Sonya Johnson's eyewitness identification of Mr. Ligons as the shooter — the testimony the suppressed photo arrays would have impeached. The proffer made no mention of Mr. Ligons' confession — the statement he contends was beaten out of him. Their deliberate absence from the plea's factual basis stands in stark contrast

to the record in <u>Brown</u>, where the factual predicate of the nolo plea was explicitly grounded in William Fowler's eyewitness account — the identical testimony challenged in the <u>Brady</u> claim.  <u>Brown</u>, No. 24-1019-MMB, at 21–22.  Here, the Commonwealth did not rest the plea on the challenged identification or the challenged confession.  It rested on the bare, undisputed facts of the crime: that Clarence Johnson was shot and killed.  A successful §1983 verdict for Mr. Ligons would not imply the invalidity of a plea that was not predicated on the constitutionally tainted evidence he challenges.

Second, the plea was the product of evidentiary necessity created by the <u>Brady</u> violation itself — not a concession that the original proceedings were fair.  Judge McDermott explained on the record that Mrs. Johnson was now deceased and that therefore "they wouldn't be able to use the notes of testimony from that witness's testimony at a new trial."  ECF No. 32-1 at p. 5.  This statement reflects a legal reality that goes beyond the mere fact of Mrs. Johnson's death: her prior trial testimony could not be introduced at a retrial precisely because it was the product of proceedings tainted by the <u>Brady</u> violation.  The suppression of the photo arrays infected the integrity of her in-court identification, rendering that testimony unusable on retrial.  The Commonwealth's plea offer was its acknowledgment that the <u>Brady</u> violation had dismantled its case.  Mr. Ligons accepted that offer not to concede the fairness of his original prosecution, but because it afforded him the earliest possible

release after 26.5 years of incarceration.  A plea entered under those circumstances — compelled by the downstream consequences of the constitutional violation itself — does not validate the original proceedings or render Mr. Ligons' §1983 claims inconsistent with his outstanding conviction.

These two grounds together demonstrate that this case is fundamentally different from <u>Brown</u>.  In <u>Brown</u>, insulation was impossible because the sole inculpatory witness whose account formed the nolo plea's explicit factual basis — Mr. Fowler — was the identical witness whose statement was the subject of the <u>Brady</u> challenge, and there was no clean evidentiary foundation for the second conviction separate from the challenged misconduct.  <u>Brown</u>, No. 24-1019-MMB, at 21–22.  Here, by contrast, the eyewitness was dead and her identification was omitted from the plea's factual basis entirely; the confession was likewise absent from the proffer; and the plea was entered precisely because the <u>Brady</u> disclosure, combined with Mrs. Johnson's death, had already dismantled the evidentiary foundation of the original prosecution.  Far from demonstrating that the <u>Brady</u> violation was immaterial, the circumstances of the plea confirm its materiality: the case could not be retried on its original evidentiary footing.

**IV.  DEFENDANTS' ARGUMENT REGARDING THE PENNSYLVANIA SUPREME COURT'S RULING ON DIRECT APPEAL DOES NOT COMPEL A DIFFERENT RESULT**

Defendants argue that because the Pennsylvania Supreme Court found on direct appeal that Mr. Ligons was not denied a fair trial in light of the Kloiber instruction and the parties' treatment of Mrs. Johnson's testimony, he cannot now establish the materiality of the suppressed photo arrays. ECF No. 32 at 8–9. That argument fails on multiple grounds.

The Defendants' position is internally contradictory in a way that should not escape the Court's attention. The District Attorney's Office, the same governmental entity whose prosecutors denied the existence of the photo arrays for years, conceded in the habeas proceedings that the Brady violation occurred and that relief was warranted. The DAO then negotiated a plea whose factual basis was deliberately crafted to omit any mention of Mrs. Johnson's identification or Mr. Ligons' confession — the very evidence the suppressed materials would have undermined. Now, the City's lawyers argue that this same suppressed evidence was immaterial. The City cannot simultaneously benefit from a plea that was structured to avoid the tainted evidence and then claim that evidence was inconsequential. It is the Defendants who are seeking to have it both ways: conceding a Brady violation to obtain a plea, crafting a factual basis that carefully excludes the challenged evidence, and then invoking the resulting plea as proof that the excluded evidence did not matter.

The terms of the plea agreement itself refute the City's immateriality argument in the most concrete terms possible. Mr. Ligons was convicted of first-degree murder and sentenced to death, later commuted to life imprisonment without the possibility of parole. After the suppressed evidence was disclosed and the federal court vacated his conviction, the Commonwealth offered him a plea to third-degree murder with a sentence of fifteen to thirty years, a sentence he had already served. The Commonwealth did not offer Mr. Ligons the chance of being released because the suppressed evidence was inconsequential. It offered those terms because the Brady violation had so thoroughly compromised its case that it could no longer responsibly seek to re-impose a life sentence against a man it had prosecuted using suppressed exculpatory evidence. The disparity between a sentence of life imprisonment and the sentence the Commonwealth offered Mr. Ligons is not the signature of immaterial evidence — it is the Commonwealth's own acknowledgment, expressed through the terms it was willing to accept, that the suppressed photo arrays and the evidence of physical coercion fundamentally altered the evidentiary landscape of this case. To argue now that the same evidence was legally inconsequential is to contradict the Commonwealth's own conduct.

The materiality of the suppressed evidence must be assessed in relation to the original proceedings — not the 2024 plea — because that is where the Brady violation occurred and where confidence in the verdict was undermined. As the

Supreme Court held in Kyles v. Whitley, materiality is established when "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" 514 U.S. at 434 (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)). Measuring materiality against a subsequent guilty plea entered years after the violation — under circumstances of evidentiary collapse created by that same violation — would effectively nullify the Brady guarantee by allowing the consequences of suppression to defeat the very claims that suppression gives rise to. At the original trial, the prosecution rested on three interlocking pillars: (1) Mrs. Johnson's eyewitness identification of Mr. Ligons as the shooter; (2) the testimony of Detective Gross that no photo arrays existed and that no photographic identification procedure was ever conducted; and (3) Mr. Ligons' inculpatory statement, which he contends was beaten out of him by the same detectives. The suppressed evidence undermined all three pillars simultaneously. The photo arrays contradicted the detectives' sworn testimony that no arrays existed, exposing them as having been "clearly mistaken or blatantly lied" about a central fact of the investigation. PCRA Ct. Op. 8/29/13 at 14. Because Detective Gross was also present when Mr. Ligons' statement was taken, evidence that he lied about the photo arrays directly undermined the credibility of his testimony that the confession was voluntary and uncoerced. And the arrays themselves — which showed no marking indicating that Mrs. Johnson identified anyone — would have powerfully impeached

her in-court identification. The suppressed evidence did not merely affect one witness on a collateral matter; it attacked the credibility of every piece of evidence the prosecution used to connect Mr. Ligons to the crime.

The Pennsylvania Supreme Court's direct appeal ruling does not save Defendants' argument because that ruling was itself premised on the Commonwealth's fraudulent concealment. The Commonwealth denied the existence of the photo arrays in its direct appeal brief, and the Pennsylvania Supreme Court relied on that false representation in concluding it "cannot conclude that the evidence existed." Commonwealth v. Ligons, 773 A.2d 1231, 1237 (Pa. 2001). A materiality ruling premised on the Commonwealth's own suppression of the very evidence at issue cannot be used to immunize that suppression from civil liability. The federal habeas court reached the opposite conclusion on the same record, with the arrays actually before it, finding materiality and granting relief. Ligons v. Beard, No. 09-05095-JLS, ECF No. 128 (E.D. Pa. Sept. 21, 2023). That federal adjudication governs for purposes of this proceeding.

Finally, the fact that the prosecutor, defense counsel, and trial judge all questioned Mrs. Johnson's reliability at the original trial does not establish that the suppressed arrays were immaterial — it confirms the opposite. Materiality under Brady is not measured by asking whether a witness was already under suspicion; it is measured by asking whether the suppressed evidence "creates a reasonable

probability of a different result." <u>Kyles</u>, 514 U.S. at 434.  Photo arrays showing that the sole eyewitness either did not identify Mr. Ligons, identified someone else, or was never shown arrays at all — combined with evidence that the detectives lied about their very existence — would have provided the jury with a concrete, documentary basis to reject the identification entirely, rather than merely receiving a cautionary instruction.  The PCRA court itself found that the detectives "were clearly mistaken or blatantly lied" about the photo arrays, PCRA Ct. Op. 8/29/13 at 14, a finding the federal habeas court credited in vacating Mr. Ligons' conviction. These are not the hallmarks of immaterial evidence.

## V.  CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.  <u>Brown</u> is not binding, represents the minority view, and is factually distinguishable from this case in ways that are decisive.  Unlike in <u>Brown</u>, the <u>Brady</u> violation here was adjudicated by a federal court.  The guilty plea transcript itself reveals that the plea was compelled by the death of the sole eyewitness, not by any concession of the fairness of the original proceedings.  Mr. Ligons entered his plea with full knowledge of the adjudicated constitutional violations, rendering his second conviction a clean conviction under the majority rule in this District.  The Commonwealth's own conduct confirms what the law

requires: the DAO conceded the <u>Brady</u> violation, structured a plea whose factual basis deliberately excluded the constitutionally tainted evidence, and offered Mr. Ligons relief from a life sentence — conduct that is flatly inconsistent with the City's present claim that the suppressed evidence was immaterial and that this action should be dismissed.

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC**

Date: <u>June 12, 2026</u>

/s/ Kevin V. Mincey
Kevin V. Mincey, Esquire
Attorney I.D. No. 90201
1650 Market Street, 36th Floor
Philadelphia, Pennsylvania 19103
(215) 587-0006
kevin@minceyfitzross.com

Counsel for Antoine Ligons

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I caused the foregoing Plaintiff's Response in Opposition to Defendants' Supplemental Memorandum of Law in Support of Motion to Dismiss to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered participants in the Court's CM/ECF system.

Date: June 12, 2026                                          /s/ Kevin V. Mincey
                                                             Kevin V. Mincey, Esquire